IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

*ELECTRONICALLY FILED*

| | |
|---|---|
| ZACHARIAH DITMORE | ) |
| | ) |
|     *Plaintiff*, | ) |
| | ) |
| -vs- | )   **Case No. _____** |
| | ) |
| **OK HUI GUTIERREZ,** | )   **JURY DEMAND** |
| **VICTOR GUTIERREZ,** | ) |
| **EAGLE EVENT CENTER,** | ) |
| **NELAN DESHOMMES,** | ) |
| **BRIAN THOMPSON, JR.,** | ) |
| **DARIUS TAYLOR, and** | ) |
| **UNKNOWN DOORMEN #1 and #2,** | ) |
| | ) |
|     *Defendants*. | ) |

## COMPLAINT

Plaintiff, ZACHARIAH DITMORE ("Mr. Ditmore"), by counsel, for his claims against the Defendants, OK HUI GUTIERREZ, VICTOR GUTIERREZ, EAGLE EVENT CENTER, NELAN DESHOMMES, BRIAN THOMPSON, JR., DARIUS TAYLOR, and UNKNOWN DOORMEN #1 and #2, hereby states the following:

## PARTIES

1. At all times mentioned herein, the Plaintiff, Zachariah Ditmore, was and is a citizen of Bowling Green, Warren County, Kentucky, residing at 11695 Highway 185, Bowling Green, Kentucky 42101.

2. At the time of the events giving rise to this suit, Defendants Ok Hui Gutierrez and Victor Gutierrez were citizens of Clarksville, Montgomery County, Tennessee, residing at 1460 Dr. Meade Lane, Clarksville, Tennessee 37042, and they may be served at that address.

3. At the time of the events giving rise to this suit, Eagle Event Center was a sole proprietorship, general partnership, joint venture, or other type of unincorporated entity, existing in the City of Clarksville, Tennessee, owned and operated by Defendant Ok Hui Gutierrez, Defendant Victor Gutierrez, or both. Eagle Event Center may be served through its owner(s), Ok Hui Gutierrez and/or Victor Gutierrez, at 1460 Dr. Meade Lane, Clarksville, Tennessee 37042.

4. At the time of the events giving rise to this suit, Defendant Nelan Deshommes was a citizen of Clarksville, Montgomery County, Tennessee, residing at 318 Copeland Road, Clarksville, Tennessee 37042, and he may be served that that address.

5. At the time of the events giving rise to this suit, Defendant Darius Taylor was a citizen of Clarksville, Montgomery County, Tennessee, residing at 305 Lowline Drive, Clarksville, Tennessee, 37043, and he may be served at that address.

6. At the time of the events giving rise to this suit, Defendant Brian Thompson, Jr., was a citizen of Clarksville, Montgomery County, Tennessee, residing at 658 Sturdivant Drive, Clarksville, Tennessee 37042, and he may be served at that address.

7. Defendant Unknown Doorman #1 is believed to have been present and acting as a doorman and/or security guard at the Eagle Event Center at the time of the events described herein.

8. Defendant Unknown Doorman #2 is believed to have been present and acting as a doorman and/or security guard at the Eagle Event Center at the time of the events described herein.

## JURISDICTION & VENUE

9. This Court is vested with jurisdiction to hear and try all issues presented in this action pursuant to 28 U.S.C. § 1332, since diversity of citizenship exists between Mr. Ditmore and all Defendants to this action, and the amount in controversy exceeds $75,000.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, as all of the relevant facts occurred within this federal district.

## BACKGROUND

11. Defendants Ok Hui and Victor Gutierrez jointly own a commercial building located at 131 Tiny Town Road, Clarksville, Tennessee 37042 (the "premises").

12. The premises is a one-story building with entrances at the front, back, and side, and first-floor windows at the front of the building and on the side of the building.

13. The Gutierrezes operate an event center on the premises called the "Eagle Event Center" ("EEC"), and, on information and belief, the EEC is owned and operated by Defendant Ok Hui Gutierrez, Defendant Victor Gutierrez, or both, as a sole proprietorship, general partnership, joint venture, or some other type of unincorporated entity.

14. The EEC qualifies as an "after-hours establishment," "after-hours club," and/or "after-hours business," as defined in Section 5-1410 of Clarksville City Ordinance 41-2014-15.

15. The maximum occupancy load for the premises is ninety-nine (99) people.

16. As owners and operators of the EEC, the Gutierrezes advertise to and solicit event hosts, promoters, and organizers, etc., for the purpose of allowing such hosts, promotors, or organizers to "book" the EEC for events and/or parties.

17. In exchange, these hosts, promoters, or organizers pay EEC and/or the Gutierrezes a fee for their use of the premises and the EEC's amenities.

18. On or about September 26, 2020, Defendant Nelan Deshommes ("Deshommes"), who, on information and belief, is a disc jockey who hosts, promotes, and organizes events, booked the EEC from 10:00 p.m. on Friday, October 2, 2020, until 2:00 a.m. on Saturday, October 3, 2020, for the purpose of hosting an event (hereinafter, the "Event").

19. The Gutierrezes, the EEC, and/or Deshommes retained and/or hired Defendants Brian Thompson, Jr. ("Thompson"), Darius Taylor ("Taylor"), and Unknown Doorman #1 and #2 (collectively, the "Doormen"), to act as doormen and provide security for the Event.

20. Neither the Gutierrezes nor anyone else affiliated with the EEC exercised reasonable care to ensure that Deshommes was competent or capable of hosting, promoting, or organizing the Event, or to ensure that he had hired and/or retained adequate security for the Event.

21. Neither the Gutierrezes, the EEC, nor Deshommes exercised reasonable care to ensure that the Doormen were responsible or capable of providing adequate security for the Event.

22. Deshommes circulated fliers advertising the Event. A true and correct copy of a flier circulated to advertise the Event is attached hereto as **Exhibit A**.

23. The Event was advertised as "BYOB"—"Bring Your Own Booze."

24. On or about Friday, October 2, 2020, the Plaintiff, Zachariah Ditmore, arrived at the EEC for the purpose of attending the Event hosted and advertised by Deshommes.

25. Mr. Ditmore waited in a line behind the EEC prior to entering the EEC.

26. The line led Mr. Ditmore to the back entrance of the EEC, where the Doormen were acting as doormen or security guards.

27. Mr. Ditmore paid an entry fee of $20.00 at the door.

28. Thereafter, one or more of the Doormen permitted Mr. Ditmore to enter the premises and attend the Event.

29. None of the Doormen, nor anyone else, were stationed at the front or side entrances of the premises, and the side entrance of the premises was unlocked.

30. Patrons of the EEC and/or Event attendees entered and exited through the side entrance of the EEC without consequence and without being patted down or checked for weapons.

31. None of the Doormen, nor anyone else, were guarding the first-floor windows of the premises, and the first-floor windows of the premises were unlocked.

32. On information and belief, patrons of the EEC and/or Event attendees opened the unlocked windows and handed weapons to persons inside the EEC.

33. By the time Mr. Ditmore gained entry to the premises, well over one hundred (100) people were already inside the EEC.

34. Inside the EEC, a disc jockey and/or live band was present and playing live and/or recorded music through a sound amplification system.

35. Many patrons of the EEC and/or Event attendees were under the age of twenty-one (21) but were nonetheless consuming alcoholic beverages.

36. All alcoholic beverages consumed at the EEC during the Event were brought into the EEC by the EEC's patrons and/or the Event's attendees (i.e., "BYOB"), and none of the alcoholic beverages consumed at the EEC during the Event were served by a bartender with an active license or catering license issued by the Tennessee Alcoholic Beverage Commission.

37. Sometime between 12:00 a.m. and 2:00 a.m. on Saturday, October 3, 2020, a fight broke out near the front entrance of the EEC, an area where none of the Doormen were present.

38. The Doormen did not restrain the fight or prevent it from escalating.

39. As the fight escalated, an unknown gunman (the "Gunman") pulled out a firearm and began shooting into a crowd of Event attendees.

40. While attempting the flee the scene, Mr. Ditmore was shot and had to be transported by ambulance to the emergency room at Tennova Healthcare in Clarksville, Tennessee.

41. After discharge from the emergency room, Mr. Ditmore received additional care for his gunshot wounds at Vanderbilt University Medical Center in Nashville, Tennessee.

42. Mr. Ditmore has sustained personal injuries, lost wages, and incurred significant medical bills as a result of the shooting which occurred at the EEC.

### COUNT I – NEGLIGENCE PER SE
*Ok Hui Gutierrez, Victor Gutierrez &*
*the Eagle Event Center*

43. Mr. Ditmore hereby reasserts and incorporates by reference its allegations set forth in Paragraphs 1 through 42 above, as if fully set forth herein.

44. The Gutierrezes own the premises upon which the EEC is operated.

45. The EEC is owned and operated by Ok Hui Gutierrez, Victor Gutierrez, or both, as a sole proprietorship, partnership, joint venture, or some other type of unincorporated entity.

46. The EEC qualifies as an "after-hours establishment," "after-hours club," and/or "after-hours business," as those terms are defined in Clarksville City Ordinance 41-2014-15.

47. Clarksville passed City Ordinance 41-2014-15 after finding that "after-hours establishments, clubs, and businesses," such as the EEC, were generating "a disproportionate number of police calls" related to "fighting and violence" and underage drinking.

48. The purpose of the ordinance is to subject "after-hours establishments, clubs, and businesses" to additional oversight so as to prevent late-night "club" violence.

49. To that end, the ordinance prohibits a person from operating an after-hours establishment, club, or business without first obtaining a license.

50. Further, § 5-1421 of Clarksville City Ordinance 41-2014-15, imposes certain duties and prohibitions on "after-hours establishments" and the persons who operate them.

51. Pursuant to § 5-1421 of Clarksville City Ordinance 41-2014-15, the Gutierrezes, as a result of their ownership and operation of an "after-hours establishment," and the EEC, as a result of its status as an "after-hours establishment," owed Mr. Ditmore the following duties:

a. A duty not to "engage in or permit any criminal activity on the premises";

b. A duty not to "operate an after-hours establishment without a valid license";

c. A duty not to "engage in or permit . . . any disorder or . . . violence";

d. A duty not to "permit or allow any person . . . to bring any firearm . . . or other deadly weapon onto the premises of the establishment";

e. A duty not to "admit or allow to be admitted, as a patron . . . persons under the age of twenty one (21)";

f. A duty not to "admit, or allow to be admitted . . . persons in a number that exceeds the maximum occupancy of the licensed premises."

52. Section 5-1437 of Clarksville City Ordinance 41-2014-15 further states: "Any violation of any section of this chapter by any employee or agency of a licensee shall be deemed the act of the licensee and shall subject the license . . . ."

53. The Gutierrezes and the EEC breached the duties imposed by § 5-1421 of Clarksville City Ordinance 41-2014-15 by, at the very least:

a. Permitting "criminal activity"—including assault, battery, and underage drinking—to occur on the premises;

b. Permitting "disorder" and "violence" to occur on the premises;

c. Permitting and/or allowing a person—namely, the Gunman—to bring a firearm "or other deadly weapon onto the premises";

d. Admitting, or allowing to be admitted, patrons under the age of twenty-one;

e. Admitting, or allowing to be admitted, persons in a number that exceeds the maximum occupancy of the licensed premises.

54. Mr. Ditmore is within the class of persons designed to be protected by Clarksville City Ordinance 41-2014-15, and the shooting which occurred at the EEC on October 3, 2020, is precisely the type of danger that Clarksville City Ordinance 41-2014-15 was enacted to prevent.

55. As a direct and proximate result of the breaches committed by the Gutierrezes and/or the EEC, persons under the age of twenty-one (21) consumed alcoholic beverages while attending the Event at the EEC, the Gunman brought a firearm into the EEC, violence occurred at the EEC, the Gunman fired his firearm into a crowd of patrons at the EEC, Mr. Ditmore was unable to timely seek refuge from the violence scene, and Mr. Ditmore was shot.

56. As a direct and proximate result of the breaches committed by the Gutierrezes and/or the EEC, Mr. Ditmore has sustained injuries to his body and as a result of those injuries has endured in the past and will endure in the future physical pain and mental suffering; has in the past and will in the future incur medical expenses for the treatment of his injuries; has suffered an increased likelihood of, and susceptibility to, injury and disease; has lost and will continue to lose wages; and has been deprived of his enjoyment of life and experienced pain and suffering.

## COUNT II – ORDINARY NEGLIGENCE
*Ok Hui Gutierrez Victor Gutierrez &*
*the Eagle Event Center*

57. Mr. Ditmore hereby reasserts and incorporates by reference all allegations set forth in the above numbered paragraphs as if fully set forth herein.

58. The Gutierrezes own the premises located at 131 Tiny Town Road, Clarksville, Tennessee 37042 and, acting either jointly or separately, operate the EEC thereon.

59. As the owners of the premises, the Gutierrezes owed Mr. Ditmore a duty to exercise reasonable care to protect him from unreasonable risks of foreseeable harm, including the risk that

8

Mr. Ditmore would sustain injuries due to a violent crime committed by a third-party on the premises.

60. As a business operating on the premises, the EEC owed Mr. Ditmore a duty to exercise care to protect him from unreasonable risks of foreseeable harm, including the risk that Mr. Ditmore would sustain injuries due to a violent crime committed by a third-party on the premises..

61. The Gutierrezes and the EEC breached their respective duties of care, by, among other things, failing to ensure that: (1) the premises was adequately safeguarded, (2) Deshommes was responsible enough to host, promote, or organize the Event, (3) Thompson, Taylor, and Unknown Doormen #1 and #2, were capable of adequately securing the Event, (4) the first floor windows surrounding the premises were locked and that patrons were not entering, exiting, or passing items through the windows, (5) the side entrance of the EEC was locked or that patrons were not entering and existing through the side-entrance at will, (6) the number of patrons at the Event did not exceed the EEC's maximum occupancy, (7) persons under the age of twenty-one (21) were not consuming alcoholic beverages on the premises, and (8) the Event was held in compliance Section 5-1410 of Clarksville City Ordinance 41-2014-15.

62. As a direct and proximate result of the Gutierrezes and the EEC's failure to ensure the safety of the premises or ensure that Deshommes, Thompson, Taylor, and Unknown Doormen #1 and #2, were responsible enough to host and supervise the Event: (1) the number of patrons in attendance at the Event exceeded the occupancy capacity for the premises, (2) underage drinking occurred on the premises, (3) patrons with firearms entered the premises, (4) patrons gained unauthorized entrance to the premises, (5) firearms were brought into the interior of the premises,

(6) a fight broke out on the premises, and (7) the Gunman fired his firearm into a crowd of patrons, striking Mr. Ditmore and causing him to sustain personal injuries.

63. As a direct and proximate result of the breaches committed by the Gutierrezes and/or the EEC, Mr. Ditmore has sustained injuries to his body and as a result of those injuries has endured in the past and will endure in the future physical pain and mental suffering; has in the past and will in the future incur medical expenses for the treatment of his injuries; has suffered an increased likelihood of, and susceptibility to, injury and disease; has lost and will continue to lose wages; and has been deprived of his enjoyment of life and experienced pain and suffering.

## COUNT III – ORDINARY NEGLIGENCE
*Nelan Deshommes*

64. Mr. Ditmore hereby reasserts and incorporates by reference all allegations set forth in the above numbered paragraphs as if fully set forth herein.

65. Deshommes is a disc jockey who booked the EEC from 10:00 p.m. on Friday, October 2, 2020, until 2:00 a.m. on Saturday, October 3, 2020, for the purpose of hosting the Event.

66. As an occupier of the premises, Deshommes owed Mr. Ditmore a duty to exercise reasonable care to protect him from unreasonable risks of foreseeable harm, including the risk that Mr. Ditmore would sustain injuries due to a violent crime committed by a third-party on the premises.

67. Deshommes breached his duty of care by, among other things, failing to ensure that: (1) the premises was adequately safeguarded, (2) Thompson, Taylor, and Unknown Doormen #1 and #2, were competent and capable of providing adequate security for the Event, (3) the first floor windows surrounding the premises were locked and that patrons were not entering, exiting, or passing items, through the windows, (4) the side entrance of the EEC was locked or that patrons were not entering and existing through the side-entrance at will, (5) the number of patrons at the

Event did not exceed the EEC's maximum occupancy, and (6) persons under the age of twenty-one (21) were not consuming alcoholic beverages on the premises.

68. As a direct and proximate result of Deshommes' breach of duty: (1) the number of patrons in attendance at the Event exceeded the occupancy capacity for the premises, (2) underage drinking occurred on the premises, (3) patrons with firearms entered the premises, (4) firearms were brought into the interior of the premises, (5) patrons gained unauthorized entry to the premises, (6) a fight broke out on the premises, and (7) the Gunman fired his firearm into a crowd of patrons, striking Mr. Ditmore and causing him to sustain personal injuries.

69. As a direct and proximate result of the breaches committed by Deshommes, Mr. Ditmore has sustained injuries to his body and as a result of those injuries has endured in the past and will endure in the future physical pain and mental suffering; has in the past and will in the future incur medical expenses for the treatment of his injuries; has suffered an increased likelihood of, and susceptibility to, injury and disease; has lost and will continue to lose wages; and has been deprived of his enjoyment of life and experienced pain and suffering.

## COUNT IV – ORDINARY NEGLIGENCE
*The Doormen*

70. Mr. Ditmore hereby reasserts and incorporates by reference all allegations set forth in the above numbered paragraphs as if fully set forth herein.

71. The Gutierrezes, the EEC, and/or Deshommes retained and/or hired Defendants Brian Thompson, Jr. ("Thompson"), Darius Taylor ("Taylor"), and Unknown Doorman #1 and #2 (collectively, the "Doormen"), to act as doormen and to provide security at the Event.

72. The Doormen owed Mr. Ditmore a duty to exercise reasonable care to protect him from unreasonable risks of foreseeable harm, including the risk that Mr. Ditmore would sustain personal injuries as a result of a violent crime committed by a third-party on the premises.

73. The Doormen breached their duties of care owed to Mr. Ditmore by, among other things: (1) failing to safeguard the premises, (2) failing to guard the first floor windows surrounding the premises or otherwise ensure that patrons were not entering, exiting, or passing items, through the windows, (3) failing to guard the side entrance of the EEC or otherwise ensure that patrons were not entering and existing through the side-entrance at will, (4) failing to ensure that the number of patrons at the Event did not exceed the EEC's maximum occupancy, (5) failing to prevent the fight which preceded Mr. Ditmore's injuries, and (6) failing to ensure that persons under the age of twenty-one (21) were not consuming alcoholic beverages on the premises.

74. As a direct and proximate result of the breaches of duty committed by the Doormen: (1) the number of patrons in attendance at the Event exceeded the occupancy capacity for the premises, (2) underage drinking occurred on the premises, (3) patrons with firearms entered the premises, (4) firearms were brought into the interior of the premises, (5) patrons gained unauthorized entry to the premises, (6) a fight broke out on the premises, and (7) the Gunman fired his firearm into a crowd of patrons, striking Mr. Ditmore and causing him to sustain injuries.

75. As a direct and proximate result of the breaches committed by the Doormen, Mr. Ditmore has sustained injuries to his body and as a result of those injuries has endured in the past and will endure in the future physical pain and mental suffering; has in the past and will in the future incur medical expenses for the treatment of his injuries; has suffered an increased likelihood of, and susceptibility to, injury and disease; has lost and will continue to lose wages; and has been deprived of his enjoyment of life and experienced pain and suffering.

### **COUNT V – VICARIOUS LIABILITY**
*Ok Hui Gutierrez, Victor Gutierrez, the EEC & Nelan Deshommes*

76. Mr. Ditmore hereby reasserts and incorporates by reference all allegations set forth in the above numbered paragraphs as if fully set forth herein.

77. The Gutierrezes, the EEC, and/or Deshommes retained and/or hired the Doormen to act as doormen and to provide security at the Event.

78. As a result of the employment and/or actual or apparent agency relationship created by and between the Gutierrezes, the EEC, and/or Deshommes, on the one hand, and the Doormen, on the other, the Gutierrezes, the EEC, and/or Deshommes are vicariously liable for all acts of negligence committed by the Doormen which caused Mr. Ditmore's injuries.

### COUNT VI – VICARIOUS LIABILITY
*Ok Hui Gutierrez, Victor Gutierrez, and the EEC*

79. Mr. Ditmore hereby reasserts and incorporates by reference all allegations set forth in the above numbered paragraphs as if fully set forth herein.

80. The Gutierrezes and/or the EEC allowed Deshommes to "book" the EEC and, in doing so, authorized him to hold the Event in compliance with Clarksville City Ordinance 41-2014-15 and all other applicable federal, state, and local laws.

81. By allowing Deshommes to host the Event at the EEC without supervision from the Gutierrezes and entrusting him to do so in compliance with all applicable laws, the Gutierrezes and/or the EEC expressly and/or impliedly granted Deshommes the ability and authority to operate the EEC.

82. Because Deshommes hosted the Event at the EEC without supervision from the Gutierrezes and was entrusted to do so in compliance with all applicable laws, a third-party attending the EEC would reasonably believe that Deshommes had authority to act for and on behalf of the Gutierrezes and/or the EEC.

83. As a result of the actual or apparent agency relationship created by and between the Gutierrezes and/or the EEC on the one hand, and Deshommes on the other, the Gutierrezes and/or the EEC are vicariously liable for all acts of negligence committed by Deshommes.

## COUNT VII – PUNITIVE DAMAGES
*All Defendants*

84. Mr. Ditmore hereby reasserts and incorporates by reference all allegations set forth in the above numbered paragraphs as if fully set forth herein.

85. The Gutierrezes and/or EEC intentionally, maliciously, and/or recklessly, failed to comply with Clarksville City Ordinance 41-2014-15, as is evident from their and its conscious disregard of the prohibitions and duties imposed them and it by Section 5-1410, and therefore, an award of punitive damages is warranted.

86. The Gutierrezes and/or EEC, as owners and occupiers of the premises, intentionally, maliciously, and/or recklessly, disregarded their common-law duty to exercise reasonable care to prevent foreseeable risks of harm to patrons of the premise, including the risk that Mr. Ditmore would sustain personal injuries as a result of a violent crime committed by a third-party on the premises, as is evident from the fact that the Gutierrezes and/or the EEC failed to take any action or implement any measures designed to ensure the safety of the premises or that the persons hosting and/or safeguarding the premises were capable of doing so adequately, and, therefore, an award of punitive damages is warranted.

87. Deshommes, as an occupier of the premises, intentionally, maliciously, and/or recklessly, disregarded his common-law duty to exercise reasonable care to prevent foreseeable risks of harm to patrons of the premise, including the risk Mr. Ditmore would sustain personal injuries as a result of a violent crime committed by a third-party on the premises, as is evident from the fact that Deshommes failed to take any action or implement any measures designed to ensure the safety of the premises or that the persons hosting and/or safeguarding the premises were capable of doing so adequately, and, therefore, an award of punitive damages is warranted.

88. The Doormen intentionally, maliciously, and/or recklessly, disregarded their common-law duties to exercise reasonable care to prevent foreseeable risks of harm to patrons of the premise, including the risk that Mr. Ditmore would sustain personal injuries as a result of a violent crime committed by a third-party on the premises, as is evident from the fact that the Doormen failed to take any action or implement any measures designed to ensure the safety of the premises or that the persons hosting and/or safeguarding the premises were capable of doing so adequately, and, therefore, an award of punitive damages is warranted.

WHEREFORE, the Plaintiff, Zachariah Ditmore, prays for a joint and several judgment against the Defendants, Ok Hui Gutierrez, Victor Gutierrez, Eagle Event Center, Nelan Deshommes, Brian Thompson, Jr., Darius Taylor, and Unknown Doormen #1 and #2, as follows:

A. For a joint and several judgment against Defendants for compensatory damages in an amount in excess of the jurisdictional amount of this Court;

B. For a joint and several judgment against Defendants for punitive damages;

C. For their costs herein expended, including attorney's fees;

D. For interest at the maximum rate allowed by law from October 3, 2020, until the date judgment is entered, and from the date judgment is entered until paid in full;

E. For all other relief to which it appears the Plaintiff is entitled; and

F. Trial by jury.

This 16th day of July, 2021.

        Respectfully submitted,

        */s/ R. Alex Thomason*
        Thomas N. Kerrick/ KY Bar No. 38265
        R. Alex Thomason/ TN Bar No. 036227, KY Bar No. 98621
        Kerrick Bachert PSC
        1025 State Street
        Bowling Green, KY 42101
        Phone: (270) 782-8160
        Fax: (270) 782-5856
        tkerrick@kerricklaw.com
        athomason@kerricklaw.com
        *Lead Counsel for Plaintiff*

        and

        */s/ Trey D. Buckley*
        William D. "Trey" Buckley, III/ TN Bar No. 036304
        McWherter, Scott & Bobbitt
        341 Cool Springs Blvd., Ste. 230
        Franklin, TN 37067
        Phone: (615) 354-1144
        Fax: (615) 345-6009
        trey@msb.law
        *Local Counsel for Plaintiff*